## Shaw *v.* Folsom.[1]

*(District Court, S. D. New York. April 9, 1889.)*

1. Shipping—Charter-Party—Stipulation as to Weight—Mistake—Excessive Draught—Damages.

Respondent chartered libelant's vessel for a lump sum, contracting to load her with "not to exceed 850 tons" of guano. By error of both the master and the charterer's agent at the port of loading, the vessel took on board over 90 tons in excess of the charter amount, by reason of which additional weight she was detained several days at the bar at her port of destination. *Held*, that both parties were liable for the ship's damage.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

**2. SAME—RECOVERY OF CHARGES FOR ADDITIONAL FREIGHT.**
*Held, also,* that the ship-owner could not, in addition to his claim for damages, recover *pro rata* freight for the transportation of the additional weight.

In Admiralty.

Action for damages for detention of a vessel, and for incidental expenses, caused by excessive loading, as well as *pro rata* freight for extra weight transported.

*Wing, Shoudy & Putnam,* for libelant.
*Biddle & Ward,* for respondent.

BROWN, J. By a charter-party dated August 29, 1887, the respondent engaged the libelant's brig, the Emma L. Shaw, to proceed to Little Curaçoa, and take a cargo of guano, to be delivered at Charleston, S. C., for a lump sum as freight of $2,500. The charterer contracted to load the ship with a cargo of guano, "not to exceed 850 tons." He supposed that to be the full carrying capacity of the ship; but she could carry 1,000 tons. The object of the owners in inserting the limitation was that the ship might be under no difficulty in going over the bar at Charleston. At Little Curaçoa there were no means of weighing guano accurately. It was loaded from lighters by estimate. Such was the custom. On reaching Charleston the vessel could not pass the bar on account of the excessive draught. She was detained there six days, including rough weather, during which time part of the cargo was lightened from the ship. On delivery at Charleston, the weight was found to be 91½ tons in excess of the amount specified in the charter. It was this excess that prevented her passing the bar, and the libelant claims to recover for the detention and incidental expenses caused by the excessive loading, as well as for *pro rata* freight for the extra weight transported. I am not satisfied that there was any bad faith on the part of the respondent or his superintendent, as respects the excessive loading at Little Curaçoa. The master had equal, or nearly equal, means of judging what amount to put on board, though the rough weather prevented exact observation of the vessel's draught; and the tally kept in the log would indicate that the master must have been aware on the last day that it was likely that more was being loaded than was allowed by the charter. He had a right to refuse anything offered in excess of 850 tons. But he was doubtless in a difficult position when the superintendent insisted that that weight had not been reached. The charter must be deemed to have been entered into in view of the uncertainty as to the exact weight that must attend loading at the guano islands. The specification of 850 tons was a limit of the charterer's engagement and of his right to load; but not, I think, in the uncertainties of the place of loading, a strict and absolute warranty that in no event should more than 850 tons be put on board. The master might intentionally have taken more; and, had that appeared to be the fact, the respondent could not be held for damages. But it is plain that the master had no such intention; that the amount put aboard was a matter of difference and discussion; and I cannot find that there was bad faith or deception on either side, although the excess is much

more than any usual variation from the amount designed to be loaded. I think the responsibility of determining the correct amount rested upon one as much as the other; that both are equally responsible for the excess put on board; and, as a loss to the ship resulted directly from the excessive loading, that both parties are alike chargeable with the loss. As nothing was ever said to the respondent connecting the 850 tons with the draught of water at Charleston bar, and as he knew nothing of it, and could not have contemplated these special damages in connection with any excess above the charter limit, I have some doubts whether this is proper legal damages; but, as the point was not raised or argued, I do not consider it. The libelant cannot, in addition to the claim for damages, recover also for the *pro rata* freight for the transportation of the additional 91¼ tons; but he is entitled to include not only the expenses at Charleston, but the additional time of the vessel in loading and unloading the 91¼ tons, for which I allow 2 days at $45 per day. This, with the delay at Charleston bar, and other expenses, and interest, amounts to $780.50, one half of which is $390.25, for which the libelant may take a decree, without any costs beyond the costs already paid with the payment of the freight.